IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Marcus Antonio Frierson, | C/A No.: 1:09-94-DCN-SVH |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION |
| Warden W. Bell, Capt. Hughes, Sgt. Malcom X. Williams, Sgt. G. Toney, R. Hilton, B. Obvermen, Lt. E. Mims, John Ozmint, | |
| Defendants. | |

Plaintiff, who is proceeding *pro se* in this action, has asserted claims under 28 U.S.C. § 1983, alleging various constitutional violations, while an inmate at Lee Correctional Institution ("LCI").

Before the court are the following motions: (1) Plaintiff's Motion for Summary Judgment [Entry #54]; (2) Plaintiff's Motion for a Discovery Hearing [Entry #62]; (3) Plaintiff's Motion to Strike [Entry #63]; and (4) Defendants' Motion for Summary Judgment [Entry #64]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions for summary judgment are dispositive motions, this Report and Recommendation is entered for review by the district judge.

I.      Factual and Procedural Background

The Plaintiff filed the complaint in the above captioned matter on January 16, 2009. [Entry #1].[1] In his complaint, Plaintiff alleges that on May 11, 2008, while conducting a cell search, Sgt. Toney handcuffed Plaintiff and his cellmate and placed them on the floor with their hands cuffed behind their backs. (Compl. 3). Officers Parker and McConico were also present, but Plaintiff alleges Sgt. Toney told them, "'I got this one by myself.'" (*Id.*) Plaintiff alleges Sgt. Toney was acting unprofessional and threatening Plaintiff and his cellmate. (*Id.*) Sgt. Pearson entered the wing and asked why Plaintiff and his cellmate were handcuffed during a routine shakedown. (Compl. 4). According to Plaintiff, he told Sgt. Pearson that Sgt. Toney had just threatened to kill Plaintiff, and Sgt. Pearson went to get Capt. Hughes. (*Id.*) Plaintiff alleges that when Sgt. Pearson left, Sgt. Toney pulled out a can of mace and began spraying Plaintiff while his hands were still cuffed behind his back. (*Id.*) Plaintiff alleges Sgt. Toney was also standing on Plaintiff's toe, and grinding his boot on it. (*Id.*) Plaintiff alleges that Ofc. McConico then tried to grab Sgt. Toney to stop him. (*Id.*) According to Plaintiff, Sgt. Toney pushed Sgt. McConico off and grabbed Plaintiff up by the neck choking him. (*Id.*) Sgt. Toney then told Sgt. Parker to take Plaintiff to medical. (*Id.*)

Plaintiff states that he waited for fifteen minutes in medical while he was having trouble breathing and while his toe was bleeding. (*Id.*) Plaintiff alleges he told Capt.

---

[1] Plaintiff originally sued Ofc. McConico, Ofc. Parker, Sgt. Pearson, and Lt. June, but pursuant to the motion of Plaintiff, these Defendants were dismissed on December 8, 2009.

Hughes that Sgt. Toney assaulted him, and Capt. Hughes said she "didn't want to hear another word from [Plaintiff] or she would lock [Plaintiff] up." (Compl. 5). Plaintiff states that after he was seen by medical, Sgt. Pearson took him to take a shower and told him to write a grievance for the incident. (*Id*.) According to Plaintiff's complaint, Sgt. Toney came back to the dorm to convince Pearson, McConico, and Parker to say that Sgt. Toney had reacted as he had because Plaintiff had kicked him, but the others did not agree. (*Id*.) Plaintiff alleges he tried to file grievances on the matter, but that they were unprocessed for technical reasons. (*Id*.)

Plaintiff alleges that he was called to speak with Investigator Greer about the incident, and Investigator Greer stated that he was going to place criminal charges on Sgt. Toney. (Compl. 6). Plaintiff alleges that Pearson, Parker, and McConico gave statements and that Capt. Hughes tried to throw Parker's statement in the trash. (*Id*.) Plaintiff alleges soon after the incident described, Sgt. Toney was charged "and walked out in handcuffs" for spraying another inmate. (*Id*.) According to Plaintiff, "Capt. Hughes was force[d] to leave due to her conspiracy." (*Id*.)

In another claim, Plaintiff alleges as background that during a 2003 riot at LCI, he helped an officer who had been stabbed to get help, and that he was placed in protective custody by Ozmint and ordered away from LCI. (Compl. 3). Plaintiff states that he told classification that he is not supposed to be on the yard at LCI, but has not had any relief. (Compl. 6). He states that Ozmint is responsible for this decision. (*Id*.)

Plaintiff also makes specific allegations against Defendant Sgt. Williams. Plaintiff alleges that Defendant Williams has told other inmates in the LCI Chesterfield Unit that Plaintiff is a snitch. (*Id*.) Plaintiff also alleges that Lt. June and he were cleaning Defendant Williams's office when they found a letter to Plaintiff that was over a month old. (Compl. 7). In addition, Plaintiff alleges that one night he had to miss dinner to go to medical and Defendant Williams failed to give him dinner as instructed. (*Id*.) Plaintiff alleges that he wrote Warden Bell about the problems with Defendant Williams and she said she "was dealing with the matter." (Compl. 8). However, Plaintiff heard no further response. (*Id*.)

Plaintiff next alleges Defendant Williams told Plaintiff he was "going to send his 'goons' on [Plaintiff]." (*Id*.) Plaintiff alleges he was "jumped" by three inmates while Defendant Williams was on another shift. (*Id*.) Plaintiff alleges he reported the matter to Investigator Greer, who told Plaintiff he had some information that Defendant Williams was in the Bloods gang. (*Id*.) According to Plaintiff, after the hearing "on Sgt. Williams" where Plaintiff "went up front on him," Defendant Williams told Officer Clemons and "he was going to get [Plaintiff]." (*Id*.) Plaintiff states that Clemons told Plaintiff to be careful and stay out of Defendant Williams's way. (Compl. 8-9). Plaintiff alleges again he was jumped by three inmates (although it is unclear whether this is a more detailed allegation of the first incident of inmate attack). He alleges that the three attackers were Blood members. (Compl. 9). He states that when he returned to his cell, he received a note

from a Blood member telling him that Defendant Williams paid them to get Plaintiff out of the unit and they were planning on stabbing him. (*Id*.)

Plaintiff claims he showed the note to prison officials, who tried to place him in protective custody. (*Id*.) However, because there were no beds left, they placed him on lockup in the SMU under protective custody. (*Id*.) Plaintiff then went to the classification review board in front of Defendant Chairperson Obverman, and Defendants Hilton and Mims. (Compl. 10). Plaintiff claims he was told they cannot protect him from officers. Plaintiff states that he fears for his life. (*Id*.) Plaintiff stated that he has written grievances, but has not heard anything as a result of them. (*Id*.) Plaintiff claims that "[a]ll parties are working together and are equally involved by conspiracy." (*Id*.)

Defendants filed a motion for summary judgment on October 22, 2009. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion for summary judgment. [Entry #66]. Plaintiff filed a response in opposition to Defendants' Motion. [Entries #75]. Having carefully considered the parties' submissions and the record in this case, the court finds that genuine issues of material fact exist, and recommends Defendants' motion for summary judgment be denied and Plaintiff's Motion for summary judgment be denied.

II.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972);

*see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the *Celotex* case, the court held that defendants were "entitled to judgment as a matter of law" under Rule

56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322-323.

III. Analysis

    A. Liability of Defendants Ozmint and Bell

Defendants Ozmint and Bell argue that they must be dismissed as they cannot be held liable on a theory of *respondeat superior* in a § 1983 case. The doctrine of *respondeat superior* generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Fisher v. Washington Metro. Area Transit Authority*, 690 F.2d 1133, 1142–43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), *cert. denied*, *Reed v. Slakan*, 470 U.S. 1035 (1985).

With respect to Defendant Ozmint, Plaintiff alleged that Ozmint's direct order in 2003 required Plaintiff be transferred from LCI. (Compl. 6). Plaintiff further alleges "Now [] he[,] Jon Ozmint[,] who is the director of the SCDC in headquarters[,] [has] allowed me to be back in this yard, which is a very poor judgment which has my life, safety at risk." Thus, here Plaintiff directly alleges Defendant Ozmint is personally responsible for Plaintiff's status. Defendants do not address this allegation in their motion for summary

judgment or set forth any proof, by way of affidavit or otherwise, disputing Plaintiff's allegation. Therefore, taken in a light most favorable to Plaintiff, genuine issues of material fact exist as to whether Defendant Ozmint is personally responsible for or tacitly authorized the Plaintiff's current classification status.

Similarly, Plaintiff alleges that he informed Defendant Bell of his complaints against Defendant Williams and has presented evidence in his opposition to summary judgment that Defendant Bell was aware of these complaints through the "inmate to staff request" process. *See* Grievances of Plaintiff [Entry #75-2]. Therefore, taken in a light most favorable to Plaintiff, genuine issues of material fact exist as to whether Defendant Bell tacitly authorized any alleged constitutional violations perpetrated by Defendant Williams.

B.  Claim of Excessive Force Against Toney and Conspiracy with Hughes

Defendants do not specifically address Plaintiff's claims of excessive force used by Toney or the conspiracy claim against Hughes and Toney. Instead, Defendants argue, "As can be seen by the proofs of service filed in this case, these two Defendants have not been served." Defs.' Br. at 5. The court does not agree, as the USM Returns for Defendants Toney and Hughes [Entries #29 and #31] indicate they were properly served by certification of the United States Marshal. "[A] signed return of service of process constitutes prima facie evidence of valid service, which can be overcome only by strong and convincing evidence." *See Homer v. Jones-Bey*, 415 F.3d 748, 752 (7th Cir. 2005) (citing *O'Brien v. R.J. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1398 (7th Cir.1993);

*Hicklin v. Edwards*, 226 F.2d 410, 414 (8th Cir.1955); *Taft v. Donellan Jerome, Inc.*, 407 F.2d 807, 808-09 (7th Cir. 1969)). Thus, without any evidence from Defendants rebutting valid service or Plaintiff's substantive claims, Defendants Toney and Hughes are not entitled to summary judgment.

    C.    Claims Against Williams

Plaintiff has alleged that Defendant Williams has: (1) told other inmates Plaintiff is a snitch; (2) refused to give Plaintiff meal trays; (3) paid or bribed other inmates to attack Plaintiff; and (4) has withheld mail from Plaintiff. Defendant Williams's affidavit refutes these allegations stating: "At no time while at Lee did I pay anyone to attack inmate Frierson. At no time while at Lee did I starve inmate Frierson. At no time while at Lee did I steal from inmate Frierson." Aff. Williams [Entry #64-2]. Defendants submit no other evidence to dispute Plaintiff's claims against Williams, and do not dispute that Williams told other inmates Plaintiff was a snitch. Therefore, genuine issues of material fact remain with respect to Plaintiff's claim against Williams such that summary judgment is not appropriate.

    D.    Claim for Failure to Protect

Plaintiff's claims against Obverman, Hilton, and Mims appear to stem from their denial of Plaintiff's requests for transfer or protective custody classification. Plaintiff states that Defendants Obverman, Hilton, and Mims told him they "understand" his complaints regarding Defendant Williams and the threats of attack, but that they could not protect Plaintiff from an employee. Thus, Plaintiff alleges that Defendants Obverman,

Hilton, and Mims sent him back to the yard at LCI, despite knowledge of threats against him. In response, Defendants Obverman and Hilton submitted affidavits with conclusory statements that they followed SCDC policy in classifying Plaintiff and did not retaliate against Plaintiff. Defendants do not dispute the facts alleged by Plaintiff or attach evidence of the SCDC procedures they followed in support of their decision to send Plaintiff "back to the yard."

To establish a claim under Section 1983 for failure to protect from violence, an inmate must show: (1) "serious or significant physical or emotional injury," *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003); and (2) that the prison officials had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The second prong has been described as indifference to "specific known risks of such harm." *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). Under these principles and viewed in the light most favorable to Plaintiff, the court finds that genuine issues of material fact exist as to whether these Defendants placed Plaintiff at risk of serious harm, despite knowledge of that risk.

    E.    Exhaustion of Administrative Remedies

Defendants allege Plaintiff has failed to exhaust his administrative remedies. However, Defendants' argument and accompanying affidavit of Inmate Grievance Branch Chief Mary Coleman indicate only that Plaintiff has failed to appeal his grievances with regard to the May 11, 2008 incident with Toney to the Administrative Law Court. Coleman Aff. ¶ 5 [Entry #64-6].

This Court can take judicial notice from the numerous other prison filings in this District that the SCDC has a two-step grievance process, whereby an inmate dissatisfied with the results of his Step 1 grievance can then file a Step 2 grievance via the institutional grievance coordinator. If the inmate is then dissatisfied with the results of his Step 2 grievance, he can then appeal to the South Carolina Administrative Law Court. For purpose of exhaustion of administrative remedies so as to pursue a Section 1983 claim in federal court, an inmate does not ordinarily need to pursue his administrative remedies past the Step 2 grievance decision. *See Johnson v. Ozmint*, 567 F.Supp.2d 806, 820, n. 5 (D.S.C. 2008); *Duncan v. Langestein*, No. 07-268, 2008 WL 153975 at *5 (D.S.C. Jan. 14, 2008) (citing *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267 at *4 n. 4 (D.S.C. May 15, 2006) (recognizing that completion of Step 2 grievance exhausts administrative remedies and § 1997(a) does not require inmates to further appeal to Administrative Law Court.); *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177 at *7 n. 5 (D.S.C. Oct.31, 2007). Rather, if the prisoner is not satisfied with the response of the Step 2 SCDC official, he may then file a complaint in Federal District Court about the matters raised in his grievance.[2]

---

[2] If, however, a prisoner wishes to attack a conviction or sentence imposed by a prison disciplinary official, he or she must exhaust both steps of the prison grievance process and also appeal the Step 2 decision to the state ALJ Division before his remedies may be said to be exhausted. *See* SCDC Inmate Grievance System Procedures Issued 1-1-2006, Numbers 13.7-13.9 (requiring the inmate to appeal the result of a disciplinary hearing to the South Carolina Administrative Law Court); *Furtick v. South Carolina Dep't of Corr.*, 649 S.E.2d 35 (S.C. 2007); *see also Dicks v. South Carolina Dep't of Corr.*, No. 9:06-cv-663-HFF-GCK, 2006 WL 1207851 at *3 (D.S.C. 2006). *Cf. Braden v. 30th Judicial Circuit Ct.*, 410 U.S. 484, 490-91 (1973).

Here, Defendants have not alleged a failure by Plaintiff to complete the Step 2 grievance process and the parties have presented no evidence in this regard. Thus, Defendants have not shown Plaintiff failed to exhaust his administrative remedies in this matter and are therefore not entitled to summary judgment on this issue.

    F.    Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment reiterates the claims stated in his complaint and sets forth arguments regarding the same. However, Plaintiff has not set forth any proof in his motion and attachments to the same supporting his claims. Thus, Plaintiff's motion for summary judgment must be denied.

IV.    Plaintiff's Motion for Discovery Conference and Motion to Strike

Plaintiff filed a motion for a discovery conference [Entry #62] on October 14, 2009. The court generally does not become involved in obtaining discovery without a properly supported motion to compel filed in compliance with the Federal Rules of Civil Procedure. Rather, it is the responsibility of the party seeking discovery to serve his request on the party from whom discovery is sought. Therefore, Plaintiff's motion [Entry #62] is denied.

Plaintiff filed a motion to strike [Entry #63] on October 14, 2009 under Fed. R. Civ. Proc. 12(f). It appears Plaintiff's motion sought to strike extensions of time requested by Plaintiff. Those motions for extensions have already been granted. Therefore, Plaintiff's motion to strike [Entry #63] is denied as moot.

V.    Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for

Summary Judgment [Entry #64] be denied and Plaintiff's Motion for Summary Judgment [Entry #54] be denied. If the district judge accepts the recommendation, the parties are ordered to conduct discovery pursuant to Federal Rule of Civil Procedure 26. Further, the court denies Plaintiff's motion for discovery hearing [Entry #62] and deems moot Plaintiff's motion to strike [Entry #63].

IT IS SO RECOMMENDED.

July 22, 2010  
Florence, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**